*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NAFAA AL-MUTAWAKEL and NADIA EL SAID,

Plaintiffs-Appellants,

v

AMERICAN SELECT INSURANCE COMPANY,

Defendant-Appellee.

UNPUBLISHED
June 09, 2025
11:15 AM

No. 370741
Wayne Circuit Court
LC No. 23-010833-NI

Before: K. F. KELLY, P.J., and O'BRIEN and ACKERMAN, JJ.

PER CURIAM.

Plaintiffs appeal by right the trial court's order granting summary disposition in favor of defendant under MCR 2.116(C)(10) regarding the issue of whether plaintiffs were entitled to underinsured motorist benefits under their policy of insurance obtained from defendant. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiffs were involved in an automobile accident on August 23, 2020, in Dearborn Heights, Michigan. Plaintiffs brought suit in a separate case, *Al-Mutawakel v Westfield Insurance Company*, Wayne Circuit Court case no. 21-010348-NI (the "2021 Case"), initially seeking to recover against defendant benefits they claimed were owed but not paid under the no-fault act, MCL 500.3101 *et seq.*, as well as uninsured or underinsured motorist benefits under the policy of insurance issued by defendant. Plaintiffs later amended the complaint in the 2021 case to add the party they claimed was at fault—Samuel Montague—and no longer asserted a claim for uninsured or underinsured motorist benefits against defendant.

During the course of that litigation, plaintiffs and Montague entered into a stipulated order under which State Farm Mutual Insurance Company agreed to accept service on behalf of Montague (as their insured) in exchange for plaintiffs' agreement to "cap their recovery, including costs, interest, and attorney fees, at Defendant's $20,000 per person, $40,000 per accident policy limits . . . ." Montague subsequently moved for summary disposition on the basis of the stipulated order, which plaintiffs did not oppose, and the trial court granted the motion and closed the case.

-1-

The complaint in this case for underinsured motorist benefits was then filed against defendant, who moved for summary disposition on the basis of the stipulated order as well. According to defendant, the policy language governing underinsured motorist benefits only applied if plaintiffs were "legally entitled to recover from the owner or operator of an underinsured motor vehicle . . . ." Because the stipulated order capped plaintiffs' recovery at Montague's policy limits with State Farm, defendant argued plaintiffs were not legally entitled to anything additional under its policy. The trial court agreed and granted the motion. This appeal followed.

## II. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition under MCR 2.116(C)(10). *Lockport Twp v Three Rivers*, 319 Mich App 516, 519; 902 NW2d 430 (2017). "A motion for summary disposition made under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Id*. (quotation marks and citation omitted). "In deciding a motion under subrule (C)(10), the trial court views affidavits and other documentary evidence in the light most favorable to the nonmoving party." *Id*. (quotation marks and citation omitted). "Summary disposition under MCR 2.116(C)(10) is appropriate when, except as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." *Id*. (quotation marks, citation, and brackets omitted).

"The proper interpretation and application of an insurance policy and issues of statutory construction are reviewed de novo." *Bridging Communities, Inc v Hartford Cas Ins Co*, 345 Mich App 672, 680; 9 NW3d 92 (2023). The question of whether language in an insurance policy is ambiguous is also a question of law that this Court reviews de novo. *Casey v Auto Owners Ins Co*, 273 Mich 388, 394; 729 NW2d 277 (2006).

## III. ANALYSIS

On appeal, plaintiffs argue that the trial court erred when it granted defendant's motion because the insurance policy at issue was ambiguous as it related to the scope of coverage for underinsured motorist benefits. According to plaintiffs, the policy states that defendant would become liable to pay if the at-fault party's limits of liability become exhausted because of judgment or settlement. Plaintiffs contend this provision is in "disharmony" with the provision only requiring defendant to pay if plaintiffs are "legally entitled" to recovery.

As an initial matter, plaintiffs failed to preserve this argument by failing to raise it in the trial court. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023) ("To preserve an issue, the party asserting error must demonstrate that the issue was raised in the trial court."). In the trial court, plaintiffs did argue they were entitled to underinsured motorist benefits because Montague's policy limits had been exhausted, but did not argue that the policy itself was ambiguous or in "disharmony." Accordingly, plaintiffs have waived the issue, and the Court has no obligation to consider plaintiffs' argument on appeal. See *id*. at 289. "However, this Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Id*. at 289-290 (quotation marks and citations omitted). Because the question of whether a contract is ambiguous is a question of law and the facts necessary for resolution are

present, *Casey*, 273 Mich at 394, the Court will overlook plaintiffs' failure to preserve the issue. *Tolas Oil & Gas*, 347 Mich App at 289-290.

Insurance policies are interpreted in the same manner as any other contract. *Sherman-Nadiv v Farm Bureau Gen Ins Co of Mich*, 282 Mich App 75, 78; 761 NW2d 872 (2008) ("Because insurance policies are contractual agreements, they are subject to the same rules of contract interpretation that apply to contracts in general."). And because underinsured motorist coverage "is not mandated by statute, the scope, coverage, and limitations of underinsurance protection are governed by the insurance contract and the law pertaining to contracts." *Dawson v Farm Bureau Mutual Ins Co of Mich*, 293 Mich App 563, 568; 810 NW2d 106 (2011) (quotation marks and citation omitted). In other words, while personal protection insurance benefits are mandated by the no-fault act and, therefore, "the statute is the 'rule book' for deciding the issues involved in questions awarding those benefits . . . the insurance policy itself, which is the contract between the insurer and the insured, controls the interpretation of its own provisions providing benefits not required by statute." *Id*. (quotation marks and citation omitted).

"A fundamental tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and must be enforced as written." *Rory v Continental Ins Co*, 473 Mich 457, 468; 703 NW2d 23 (2005). "Courts enforce contracts according to their unambiguous terms because doing so respects the freedom of individuals freely to arrange their affairs via contract." *Id*. Thus, "[t]he primary goal in the construction or interpretation of a contract is to honor the intent of the parties." *Royal Prop Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 714; 706 NW2d 426 (2005) (quotation marks and citations omitted). "Accordingly, an insurance contract should be read as a whole and meaning should be given to all terms," and "[t]he contractual language is to be given its ordinary and plain meaning." *Id*. at 715. "The judiciary is without authority to modify unambiguous contracts or rebalance the contractual equities struck by the contracting parties because fundamental principles of contract law preclude such subjective post hoc judicial determinations of 'reasonableness' as a basis upon which courts may refuse to enforce unambiguous contractual provisions." *Id*. (quotation marks, citation, and brackets omitted).

In relevant part, the policy issued by defendant stated with respect to underinsured motorist coverage:

A. We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury:

1. Sustained by an insured; and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the underinsured motor vehicle.

We will pay under this coverage if 1. or 2. below applies:

1. The limits of liability under any bodily injury liability bonds or policies applicable to the underinsured motor vehicle have been exhausted by payment of judgments or settlements; or

2. A tentative settlement has been made between an insured and the insurer of the underinsured motor vehicle and we:

a. Have been given prompt written notice of such tentative settlement; and

b. Advance payment to the insured in an amount equal to the tentative settlement within 30 days after receipt of notification.

Although their argument is not entirely clear, plaintiffs contend that the policy is ambiguous because it only obligates defendant to pay underinsured motorist benefits that plaintiffs are "legally entitled to recover," but at the same time requires payment even when there is a settlement or judgment. We disagree. The two provisions do not present any ambiguity; rather, the operation of the two "disharmonious" provisions simply left plaintiffs without the additional coverage when viewed in light of the stipulated order.

The first provision of the policy, which was relied on by the trial court when granting defendant's motion, states that defendant "will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle . . . ." Defendant argued, and the trial court agreed, that because under the stipulated order plaintiffs were only entitled to recover the limits of Montague's policy, defendant never became obligated to pay additional amounts under its policy. While plaintiffs did counter this argument by pointing to the second provision at issue, which states that defendant will pay if "[t]he limits of liability under any bodily injury liability bonds or policies applicable to the underinsured motor vehicle have been exhausted by payment of judgments or settlements[,]" plaintiffs never suggested the provisions were in disharmony or were ambiguous.

Plaintiffs' fundamental problem is that they do not read the two provisions together, as the language of the policy itself directs. In other words, if the two provisions were written together, and not separated by other subparagraphs and clauses as is the case in the actual policy, the provision would read something like: *We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle, but only if the limits of liability under any bodily injury liability bonds or policies applicable to the underinsured motor vehicle have been exhausted by payment of judgments or settlements, or a tentative settlement has been made between an insured and the insurer of the underinsured motor vehicle and we have been given prompt written notice of such tentative settlement.* While it is correct that Montague's limits of liability were exhausted, thus satisfying the first condition of the second provision, plaintiffs were not "legally entitled" to any additional damages from Montague under the stipulated order, which stated that plaintiffs "will cap their recovery, including costs, interest, and attorney fees, at Defendant's $20,000 per person, $40,000 per accident policy limits in exchange for acceptance of the Summons and Complaint by State Farm Mutual Automobile Insurance Company." And because defendant's liability under the underinsured motorist coverage provision flowed from Montague's ultimate liability, the underinsured motorist provision did not apply.

While plaintiffs may be dissatisfied with the agreement they made and believe the benefit was not worth the cost, the agreement—i.e., the stipulated order—is clear that plaintiffs traded a limitation on their damages in exchange for acceptance of service of the complaint. The legal effect of that bargain also meant that plaintiffs could not avail themselves of the additional coverage provided by defendant's insurance policy, because plaintiffs were no longer legally entitled to recover more from Montague.

Affirmed. Defendant, as the prevailing party, may tax costs. MCR 7.219(A).

/s/ Kirsten Frank Kelly
/s/ Colleen A. O'Brien
/s/ Matthew S. Ackerman